Andrew W. Metcalfe

v.

W. P. Bradshaw.

*Partnership—Dissolution—Accounting.*

In view of the evidence in the case presented, this court holds, that certain commissions received by one of two partners, were not the receipts of the firm, or earnings in which the other was entitled to any share, or for which the former could be required to account.

Metcalfe v. Bradshaw.

[Opinion filed June 21, 1892.]

APPEAL from the Circuit Court of Madison County; the Hon. ALONZO S. WILDERMAN, Judge, presiding.

On August 26, 1874, Metcalfe & Bradshaw formed a partnership which continued until December 15, 1885, and was then dissolved by mutual consent, Metcalfe retaining possession of the firm books of account. By the provisions of the written articles, the parties associated themselves together for the purpose of practicing law under the firm name of Metcalfe & Bradshaw, for the term of five years. The first year Metcalfe to take two-thirds, and Bradshaw one-third. Second year Metcalfe to take three-fifths, and Bradshaw two-fifths of the receipts of the firm, and thereafter, until the dissolution of said partnership, each to take an equal share of the receipts of the firm. The expenses of the firm to be paid by each in proportion to his share of the receipts of the firm. The fourth clause is: "We, and each of us, pledge ourselves to each other not to become a candidate for any political office, so as to be involved in politics during the continuance of the firm, unless by mutual consent." The fifth clause is: "We, and each of us, do promise and agree to give our time, our talents and our strength to the prosecution of the interest of the firm." And the sixth clause provides: "Any omission to keep and observe the promises and agreements herein named and agreed upon, by either of the parties hereto, will justify the other in a dissolution of the partnership." On October 8, 1889, nearly four years after the dissolution, Metcalfe filed his bill in this cause against Bradshaw, setting up the fact of partnership and its dissolution; that business to a large amount was done on credit by said firm and remained unsettled, and no settlement of the partnership business had been made; that complainant frequently applied to defendant for a settlement and he refused to make any and had collected a large amount due and owing the firm under the partnership contract, earned by the members of said firm, and belonging to said firm, and failed to place the same in the

partnership books of account, and refuses to render to complainant any account of the partnership moneys received by him; that upon a full and true settlement of the partnership accounts, a large balance will appear to be due from defendant to complainant. Prays that an account may be taken of all the partnership dealings and transactions, and that the same may be fully adjusted, and the rights of the parties ascertained, and that defendant be decreed to pay what, if anything, shall appear upon such account to be due from him, and for further relief in the premises, etc. The answer of defendant admits the partnership and its dissolution as alleged, and that no actual settlement by an account taken was then had, the parties agreeing to a dissolution by a tacit understanding; as matters then stood pecuniarily, defendant then believing that an account stated would show a balance largely in his favor, but willing, for the sake of peace and a dissolution, to consider that each had received what he was entitled to under the articles; admits many debts were due the firm at time of dissolution, and alleges he expected to share in such outstanding debts, and that complainant carried off and retained all evidences of such indebtedness to the firm, and collected much of it, as defendant has been informed by clients from time to time; denies that he has collected one dollar of it, or received any of the collections made by complainant; denies that complainant, since the dissolution, ever called for a settlement, or pretended defendant was indebted to him on account of partnership matters, until two months since, shortly before bill was filed, he first spoke about it; that defendant then inquired what there was of their partnership matters he complained of, that defendant had not properly accounted for, and complainant replied nothing further than that during the partnership defendant had, as executor of the wills of Charles R. Bennett and John Neudecker, received commissions as such, and although not legally liable to complainant, yet, as it was done during the existence of the partnership, he ought to share with complainant, but whether he, the complainant, would ever call on defendant to account for said commissions, was a question; denies receiving any

moneys for the firm which he has failed to place on the books, or account for; alleges that he has no means of stating an account, because the memorandums and partnership books are, and ever since the dissolution have been, in complainant's possession. Replication to the answer was filed, and when the cause came on to be heard, the following stipulation in writing was entered into and filed:

" It is stipulated and agreed by and between counsel that the matters contended for by the complainant in this case are limited to the commissions involved in three certain cases, namely, in Charles R. Bennett's estate, Theodore Emmert's estate, and John Neudecker's estate, with the understanding that everything outside of these estates in the partnership has been settled by and between them."

The cause was then heard and the court found said commissions were not, by said parties, considered and treated as profits of or belonging to said firm, and that complainant is not entitled to have of and from the defendant an account thereof. The court decreed that the bill be dismissed, each party to pay his own costs. The complainant appealed and brings the record to this court for review.

Mr. JOHN G. IRWIN, for appellant.

Messrs. WISE & McNULTY, for appellee.

GREEN, P. J. By the provisions of the partnership agreement each partner became entitled to share in the receipts of the firm, less the expenses. No profits from any other source, derived by either partner, were to be shared or accounted for in a settlement between them of the partnership business. That business was the practice of the law. It was so expressed in the agreement, and it is alleged in the bill that no other articles or instrument was ever prepared and executed between the parties, but that the copartnership was carried on in pursuance of and under the said agreement up to the dissolution thereof December 15, 1885. By the terms of the stipulation under which the cause was tried, nothing was left

for the consideration of the court other than the commissions received by Bradshaw as executor of two estates and administrator of a third. If these commissions were receipts of the firm, appellant was entitled to a share thereof and to have an account from appellee, otherwise the bill was properly dismissed. Appellant contends these commissions were receipts of the firm, to a share of which he was legally entitled as a partner, and this is denied by appellee.

There is nothing in the articles of copartnership, fairly construed, supporting appellant's contention, and the acts and declarations of the parties, together with other facts and circumstances in evidence, clearly indicate the commissions were not receipts of said partnership business earned by the firm, and were not so considered and treated by the members thereof.

The Bennett estate was settled September 17, 1881, more than nine years prior to filing the bill in this case. The Emmert estate was settled June 3, 1882, more than eight years prior to filing said bill, and the Neudecker estate was finally settled December 21, 1885, and although Metcalfe knew at the times when Bradshaw took out his several letters testamentary and of administration that he had done so, and knew that he was acting in the capacities mentioned, that he had received these commissions and they amounted to several thousand dollars, yet during all these years no entry was made in the firm books of such receipts, and no demand was made by Metcalfe for any share thereof, except that Bradshaw testified Metcalfe came to him September 1, 1889, and asked him if he did not think he ought to divide the commissions in the Neudecker estate, and he, Bradshaw, said no, and that he didn't think he owed him anything; that Metcalfe then said, " I don't think you are legally liable, but morally you ought to," and that he, Bradshaw, replied, " I shall not do it;" that Metcalfe asked him a few days afterward in the court room if he would do it, and he said no; that Metcalfe then said, " I will sue you," and he replied, " Go ahead." This testimony of Bradshaw was not contradicted and he denies that the firm had any claims in or to these commissions. We refrain in this

connection from discussing the method adopted by appellant to procure the selection of appellee as executor of Neudecker, together with the motive that he says prompted him to accomplish such selection, and the contradiction of his testimony by Eaton, and the effect of his acting as attorney for the estates to defeat his claim to any part of the said commissions, and hold that, independent of these matters, the facts established by the evidence contradict appellant's theory and defeat his claim. Bradshaw took no unfair advantage in accepting the positions of executor and administrator. It was not done secretly but openly, with the knowledge and consent of his partner. Acting in these capacities did not conflict with the interests of the firm or interfere with its business, as we understand the evidence. The fourth, fifth and sixth clauses of the partnership agreement, quoted in the statement of the case, do not prohibit either partner from doing other business, except neither is to become a candidate for office unless by mutual consent, and each is to give his time, talents and strength to the prosecution of the interest of the firm, and the violation of these provisions by either party will justify the dissolution at the instance of the other party. In the absence of any inhibition forbidding it, Bradshaw had the right to act as executor and administrator and receive and appropriate to his own use said commissions. In Parsons on Partnership, Sec. 6, Par. 2, Chap. 7, it is said, "It is probably not true in fact that the majority of partners confine themselves absolutely and exclusively to partnership business, or that it is expected or necessary that they should."

This is coupled with the condition that one partner can not, without the consent of the others, embark in a business that manifestly conflicts with the interests of the firm, and he can not clandestinely use the partnership property or funds for his own private advantage without being required to account to his copartners for the property or funds thus used, and for the profits made. 5 Wait's Actions and Defenses, 125.

The same doctrine above stated is announced in cases cited by appellee. Wheeler v. Sage, 1 Wall. (U. S.) 628, and other authorities.

Applying the law as we believe it to be, to the evidence disclosed by this record, we reach the same conclusion arrived at by the trial court, that the commissions were not the receipts of the firm, or earnings in which complainant was entitled to any share, or for which defendant could be required to account, and the bill was properly dismissed.

The decree of the Circuit Court is therefore affirmed.

*Decree affirmed.*